## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ALLEN KELLY, | : | |
| | : | |
| **Plaintiff** | : | **Civil No. 1:11-CV-1099** |
| | : | |
| v. | : | **(Judge Conner)** |
| | : | |
| KYLE KEMP and | : | **(Magistrate Judge Carlson)** |
| DANIEL SHEATZLE, | : | |
| | : | |
| **Defendants** | : | |

## REPORT AND RECOMMENDATION

## I.   INTRODUCTION

Plaintiff commenced the above-captioned action in the Court of Common Pleas of Lebanon County on May 26, 2011, alleging that Kyle Kemp and Daniel Sheatzle (together, "Defendants"), corrections officers at the Lebanon County Correctional Facility ("LCCF"), violated Plaintiff's constitutional rights while he was housed at the LCCF as a pretrial detainee in early 2011.  (Doc. 1, Ex.)  Specifically, Plaintiff contends that Defendants violated the Fourth and Eighth Amendments to the United States Constitution, as well as the Pennsylvania Constitution, by searching his cell at the prison on at least two occasions, and by subjecting him to strip searches each time.[1]  Defendants removed this action to this Court on June 8, 2011.  (Doc. 2)

---

[1] Plaintiff also seems to complain that during the search of his cell, Defendant Kemp read his legal documents, although Plaintiff does not articulate

Now pending before the Court is Defendants' motion to dismiss the claims in this case for failure to state a claim upon which relief can be granted, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  (Doc. 2)  Defendants filed a brief in support of their motion on July 25, 2011.  (Doc. 5)  On August 10, 2011, Plaintiff moved for an extension of time to file a response to Defendants' motion.  (Doc. 6) In response, the Court granted the motion, and directed Plaintiff to file his response on or before September 19, 2011.  (Doc. 7)  Plaintiff failed to file a brief in accordance with this schedule, and to date has failed to respond to the motion in any way.

Upon consideration of the meritorious legal arguments presented in the motion, and in consideration of Plaintiff's total failure to respond to a preliminary dispositive motion that was filed nearly three months ago, we now recommend that the Court grant the motion and close the case.

---

any stand-alone claim on the basis of this allegation.

## II.   **FACTUAL BACKGROUND**[2]

For purposes of adjudicating Defendants' motion to dismiss, the following facts are accepted as true:

At all times relevant to this action, Plaintiff was incarcerated at the LCCF as a pretrial detainee.  (Compl. ¶ 2.)  Defendants Kemp and Sheatzle were corrections officers at the LCCF during the period Plaintiff was confined at the prison.  (Id. ¶ 3.)

On March 31, 2011, Defendants conducted a "shakedown" – or search – of cell number 58 in the Special Housing Unit ("SHU") at the LCCF, where Plaintiff was housed with his cellmate, Clifford Aponte.  (Id. ¶ 4.)  Plaintiff and Mr. Aponte were housed in the SHU as punishment following a disciplinary hearing for undisclosed violations of prison rules.  (Id.)

As part of their search of Plaintiff's cell, Defendants escorted Plaintiff and Mr. Aponte out of the SHU and subjected each inmate to a strip search in view of cameras within the prison.  (Id. ¶ 5.)  Plaintiff also claims that Defendant Kemp was "excessively aggressive" in his conduct with Plaintiff during this time.  (Id. ¶ 7.) Following the strip search, Defendants searched Plaintiff's cell.  (Id. ¶ 8.)  According

---

[2] When ruling on a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the court must "accept as true all [factual] allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff."  Kanter v. Barella, 489 F.3d 170, 177 (3d Cir. 2007) (quoting Evancho v. Fisher, 423 F.3d 347, 350 (3d Cir. 2005)).

to Plaintiff, when he was returned to his cell, he found it to be in total disarray.  (Id. ¶ 9.)  Plaintiff alleges that another inmate within the SHU told him that Defendant Kempt was "going through" and reading Plaintiff's legal documents during the course of the search.  (Id.)

On April 14, 2011, Defendant Kemp "committed such same conduct" with Plaintiff and his new cellmate, Angel Torres.  (Id. ¶ 10.)  During this "shakedown," Defendant Kemp was assisted by Officer Bradley Shamaman.[3]  (Id.)  Plaintiff alleges that the officers intentionally discarded a Muslim head garment belonging to Mr. Torres during the search.  (Id.)

Plaintiff claims that the searches of his cell and his person violated the Fourth and Eighth Amendments to the United States Constitution, as well as Article 1, Section 8 of the Pennsylvania Constitution.  (Id. ¶ 11.)  Plaintiff also claims that the conduct complained of has been ongoing in the LCCF and has been disregarded by prison administrators.[4]  Plaintiff seeks declaratory and injunctive relief to prohibit LCCF officials from conducting searches of his prison cell outside of his presence, and to restrict strip searches to instances where officers have "some legitimate cause."

---

[3] Plaintiff has not sued Officer Shamanan as part of this action.

[4] Notwithstanding this allegation, Plaintiff has sued only Defendants Kemp and Sheatzle, and has not brought claims in this case against any prison supervisors, officials or administrators.

(<u>Id.</u> ¶ 15.)  In addition, Plaintiff requests compensatory and punitive damages.  (<u>Id.</u> ¶¶ 16-17.)

## III.   <u>DISCUSSION</u>

### A.   <u>Under The Rules of This Court The Motion to Dismiss Should Be Deemed Unopposed and Granted</u>.

At the outset, under the Local Rules of this Court the Plaintiff should be deemed to concur in this motion, since Kelly has failed to timely oppose the motion, or otherwise litigate this case.  This procedural default completely frustrates and impedes efforts to resolve this matter in a timely and fair fashion, and under the rules of this Court warrants dismissal of the action, since  Local Rule 7.6 of the Rules of this Court imposes an affirmative duty on the Plaintiff to respond to  motions and provides that

> Any party opposing any motion, other than a motion for summary judgment, shall file a brief in opposition within fourteen (14) days after service of the movant's brief, or, if a brief in support of the motion is not required under these rules, within seven (7) days after service of the motion. *Any party who fails to comply with this rule shall be deemed not to oppose such motion*. Nothing in this rule shall be construed to limit the authority of the court to grant any motion before expiration of the prescribed period for filing a brief in opposition. A brief in opposition to a motion for summary judgment and LR 56.1 responsive statement, together with any transcripts, affidavits or other relevant documentation, shall be filed within twenty-one (21) days after service of the movant's brief.

Local Rule 7.6 (emphasis added).

It is now well-settled that "Local Rule 7.6 can be applied to grant a motion to dismiss without analysis of the complaint's sufficiency 'if a party fails to comply with the [R]ule after a specific direction to comply from the court.' <u>Stackhouse v. Mazurkiewicz</u>, 951 F.2d 29, 30 (1991)." <u>Williams v. Lebanon Farms Disposal, Inc.</u>, No. 09-1704, 2010 WL 3703808, *1 (M.D. Pa. Aug.26, 2010). In this case Kelly has not complied with the local rules, or this Court's order, by filing a timely response to this motion. Therefore, this procedural default compels the Court to consider:

> [A] basic truth: we must remain mindful of the fact that "the Federal Rules are meant to be applied in such a way as to promote justice. *See* Fed. R. Civ. P. 1. Often that will mean that courts should strive to resolve cases on their merits whenever possible. However, justice also requires that the merits of a particular dispute be placed before the court in a timely fashion ...." <u>McCurdy v. American Bd. of Plastic Surgery</u>, 157 F.3d 191, 197 (3d Cir.1998).

<u>Lease v. Fishel</u>, 712 F. Supp. 2d 359, 371 (M.D.Pa. 2010).

With this basic truth in mind, we acknowledge a fundamental guiding tenet of our legal system. A failure on our part to enforce compliance with the rules, and impose the sanctions mandated by those rules when the rules are repeatedly breached, "would actually violate the dual mandate which guides this court and motivates our system of justice: 'that courts should strive to resolve cases on their merits whenever possible [but that] justice also requires that the merits of a particular dispute be placed before the court in a timely fashion'." <u>Id.</u> Therefore, we are obliged to ensure that

one party's refusal to comply with the rules does not lead to an unjustified prejudice to those parties who follow the rules.

These basic tenets of fairness apply here.  In this case, the Plaintiff has failed to comply with Local Rule 7.6 by filing a timely response to the motion to dismiss filed by the Defendant, even after being granted an extension of time to do so.  This failure to respond now compels us to apply the sanction called for under Rule 7.6 and deem the Plaintiff to not oppose this motion to dismiss.

**B.     <u>Dismissal of this Case Is Also Warranted Under Rule 41</u>**.

Beyond the requirements imposed by the local rules of this Court, Rule 41(b) of the Federal Rules of Civil Procedure authorizes a court to dismiss a civil action for failure to prosecute, stating that: "If the plaintiff fails to prosecute or to comply with these rules or a court order, a defendant may move to dismiss the action or any claim against it." Fed. R. Civ. P. 41(b).  Decisions regarding dismissal of actions for failure to prosecute rest in the sound discretion of the court, and will not be disturbed absent an abuse of that discretion. <u>Emerson v. Thiel College</u>, 296 F.3d 184, 190 (3d Cir. 2002)(citations omitted).  That discretion, however, while broad is governed by certain factors, commonly referred to as <u>Poulis</u> factors.  As the United States Court of Appeals for the Third Circuit has noted:

7

> To determine whether the District Court abused its discretion [in
> dismissing a case for failure to prosecute], we evaluate its balancing of
> the following factors: (1) the extent of the party's personal
> responsibility; (2) the prejudice to the adversary caused by the failure to
> meet scheduling orders and respond to discovery; (3) a history of
> dilatoriness; (4) whether the conduct of the party or the attorney was
> willful or in bad faith; (5) the effectiveness of sanctions other than
> dismissal, which entails an analysis of alternative sanctions; and (6) the
> meritoriousness of the claim or defense. Poulis v. State Farm Fire and
> Cas. Co., 747 F.2d 863, 868 (3d Cir.1984).

Emerson, 296 F.3d at 190. Recognizing the broad discretion conferred upon the

district court in making judgments weighing these six factors, the court of appeals has

frequently sustained such dismissal orders where there has been a pattern of dilatory

conduct by a *pro se* litigant who is not amenable to any lesser sanction. See, e.g.,

Emerson v. Thiel College, supra; Tillio v. Mendelsohn, 256 F. App'x 509 (3d Cir.

2007); Reshard v. Lankan Hospital, 256 F. App'x 506  (3d Cir. 2007); Azubuko v.

Bell National Organization, 243 F. App'x 728 (3d Cir. 2007).

In this case, a dispassionate assessment of the Poulis factors weighs in favor

of dismissing this action.  At the outset, a consideration of the first Poulis factor, the

extent of the party's personal responsibility, shows that the delays in this case are

attributable to the Plaintiff, who has failed to abide by court orders and has neglected

to litigate this case.

8

Similarly, the second <u>Poulis</u> factor– the prejudice to the adversary caused by the failure to abide by court orders–also calls for dismissal of this action. The Plaintiff's failures to litigate this claim or comply with court orders now delays the resolution of this action. In such instances, dismissal of the case clearly rests in the discretion of the trial judge. <u>Tillio v. Mendelsohn</u>, 256 F. App'x 509 (3d Cir. 2007) (failure to timely serve pleadings compels dismissal); <u>Reshard v. Lankan Hospital</u>, 256 F. App'x 506  (3d Cir. 2007) (failure to comply with discovery compels dismissal); <u>Azubuko v. Bell National Organization</u>, 243 F. App'x 728 (3d Cir. 2007) (failure to file amended complaint prejudices defense and compels dismissal).

When one considers the third <u>Poulis</u> factor-the history of dilatoriness on the plaintiff's part–it becomes clear that dismissal of this action is now appropriate. The Plaintiff has now failed to timely file pleadings, and comply with orders of the Court, even after being granted an enlargement of time in which to do so.

The fourth <u>Poulis</u> factor–whether the conduct of the party or the attorney was willful or in bad faith–also cuts against the Plaintiff. At this juncture, when the Plaintiff has failed to comply with instructions of the Court directing the Plaintiff to take specific actions in this case, the Court is compelled to conclude that the Plaintiff's actions are not accidental or inadvertent but instead reflect an intentional disregard for this case and the Court's instructions.

9

While <u>Poulis</u> also enjoins us to consider a fifth factor, the effectiveness of sanctions other than dismissal, cases construing <u>Poulis</u> agree that in a situation such as this case, where we are confronted by a *pro se* litigant who will not comply with the rules or court orders,  lesser sanctions may not be an effective alternative. <u>See, e.g.,</u> <u>Briscoe v. Klaus</u>, 538 F.3d 252, 262-63 (3d Cir. 2008); <u>Emerson</u>, 296 F.3d at 191.  This case presents such a situation where the Plaintiff's status as a *pro se* litigant severely limits the ability of the court to utilize other lesser sanctions to ensure that this litigation progresses in an orderly fashion.  In any event, by entering our prior orders, and counseling the Plaintiff on his obligations in this case, we have endeavored to use lesser sanctions, but to no avail.  The Plaintiff still declines to obey court orders, and otherwise ignores his responsibilities as a litigant.  Since lesser sanctions have been tried, and have failed, only the sanction of dismissal remains available to the Court.

Finally, under <u>Poulis</u> we are cautioned to consider one other factor,  the meritoriousness of the plaintiff's claims. In our view, however, consideration of this factor also weighs heavily in favor of dismissal of this action since Kelly's claims fail on their merits.

## C.   Kelly's Claims Fail On Their Merits

The Defendant has filed a motion to dismiss this complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Rule 12(b)(6) of the Federal Rules of Civil Procedure provides that a complaint should be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).  In addition, when reviewing *in forma pauperis* complaints, 28 U.S.C. § 1915(e)(2)(B)(ii) specifically enjoins us to "dismiss the complaint at any time if the court determines that . . . the action . . . fails to state a claim upon which relief may be granted."

With respect to this benchmark standard for legal sufficiency of a complaint, the United States Court of Appeals for the Third Circuit has aptly noted the evolving standards governing pleading practice in federal court, stating that:

> Standards of pleading have been in the forefront of jurisprudence in recent years. Beginning with the Supreme Court's opinion in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (12007) continuing with our opinion in Phillips v. County of Allegheny, 515 F.3d 224, 230 (3d Cir. 2008)and culminating recently with the Supreme Court's decision in Ashcroft v. Iqbal  –U.S.–, 129 S.Ct. 1937 (2009) pleading standards have seemingly shifted from simple notice pleading to a more heightened form of pleading, requiring a plaintiff to plead more than the possibility of relief to survive a motion to dismiss.

Fowler v. UPMC Shadyside, 578 F.3d 203, 209-10 (3d Cir. 2009).

In considering whether a complaint fails to state a claim upon which relief may be granted, the court must accept as true all allegations in the complaint and all reasonable inferences that can be drawn from the complaint are to be construed in the light most favorable to the plaintiff. Jordan v. Fox Rothschild, O'Brien & Frankel, Inc., 20 F.3d 1250, 1261 (3d Cir. 1994). However, a court "need not credit a complaint's bald assertions or legal conclusions when deciding a motion to dismiss." Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997). Additionally a court need not "assume that a ... plaintiff can prove facts that the ... plaintiff has not alleged." Associated Gen. Contractors of Cal. v. California State Council of Carpenters, 459 U.S. 519, 526 (1983). As the Supreme Court held in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), in order to state a valid cause of action a plaintiff must provide some factual grounds for relief which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of actions will not do." Id. at 555. "Factual allegations must be enough to raise a right to relief above the speculative level." Id. In keeping with the principles of Twombly, the Supreme Court has underscored that a trial court must assess whether a complaint states facts upon which relief can be granted when ruling on a motion to dismiss. In Ashcroft v. Iqbal, __U.S. __, 129 S.Ct. 1937 (2009), the Supreme Court held that, when considering a motion to dismiss, a court should "begin by identifying pleadings

that, because they are no more than conclusions, are not entitled to the assumption of

truth." Id. at 1950.  According to the Supreme Court, "[t]hreadbare recitals of the

elements of a cause of action, supported by mere conclusory statements, do not

suffice." Id. at 1949.  Rather, in conducting a review of the adequacy of complaint,

the Supreme Court has advised trial courts that they must:

> [B]egin by identifying pleadings that because they are no more than
> conclusions are not entitled to the assumption of truth. While legal
> conclusions can provide the framework of a complaint, they must be
> supported by factual allegations.  When there are well-pleaded factual
> allegations, a court should assume their veracity and then determine
> whether they plausibly give rise to an entitlement to relief.

Id. at 1950.

Thus, following Twombly and Iqbal a well-pleaded complaint must contain more than

mere legal labels and conclusions.  Rather, a complaint must recite factual allegations

sufficient to raise the plaintiff's claimed right to relief beyond the level of mere

speculation. As the United States Court of Appeals for the Third Circuit has stated:

> [A]fter Iqbal, when presented with a motion to dismiss for failure to
> state a claim, district courts should conduct a two-part analysis. First, the
> factual and legal elements of a claim should be separated. The District
> Court must accept all of the complaint's well-pleaded facts as true, but
> may disregard any legal  conclusions.  Second, a District Court must
> then determine whether the facts alleged in the complaint are sufficient
> to  show that the plaintiff has a "plausible claim for relief." In other
> words, a complaint must do more than allege the plaintiff's entitlement
> to relief. A complaint has to "show" such an entitlement with its facts.

13

<u>Fowler</u>, 578 F.3d at 210-11.

In addition to these pleading rules, a civil complaint must comply with the requirements of Rule 8(a) of the Federal Rule of Civil Procedure which defines what a complaint should say and provides that:

> (a) A pleading that states a claim for relief must contain (1) a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support; (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and (3) a demand for the relief sought, which may include relief in the alternative or different types of relief.

Thus, a well-pleaded complaint must contain more than mere legal labels and conclusions. Rather, a *pro se* plaintiff's complaint must recite factual allegations which are sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation, set forth in a "short and plain" statement of a cause of action.

With these considerations in mind, we turn to Kelly's claims and Defendants' motion to dismiss.

### 1.      Kelly Is No Longer Incarcerated at the LCCF, and his Claims for Injunctive Relief are Moot.

As a threshold matter, to the extent Kelly is seeking injunctive relief with respect to future searches of his cell or his body by Defendants or other staff at the

14

LCCF, we find these claims to be moot due to Kelly's subsequent transfer to the State Correctional Institution at Camp Hill. Stated simply, Kelly is no longer being held at the LCCF, and his efforts to enjoin future conduct at the jail have no basis. It is well-settled that "[a]n inmate's transfer from the facility complained of generally moots the equitable and declaratory claims." Sutton v. Rasheed, 323 F.3d 236, 248 (3d Cir. 2003) (citing Abdul-Akbar v. Watson, 4 F.3d 195, 197 (3d Cir. 1993).

Although there is a limited exception to this general rule, we find no basis to conclude that it could apply in this case. This limited exception to the mootness doctrine applies only when "'(1) the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there is a reasonable likelihood that the same complaining party would be subjected to the same action again.'" Abdul-Akbar, 4 F.3d at 206 (citation omitted). Neither of these conditions is satisfied in this case. Kelly alleges conduct by Defendants that is not too short in duration to permit full litigation. However, even if we conceivably could find that the conduct complained of was too short in duration to be fully litigated, there is no basis upon which the Court could find that Kelly is likely to be returned to the LCCF, as he is now serving a state prison sentence at SCI-Camp Hill. Accordingly, we conclude that Kelly's claims for injunctive relief should be dismissed as moot.

Kelly's transfer to a state correctional facility does not, however, render moot his claim for monetary damages.  Sutton, 323 F.3d at 249.  Nevertheless, upon consideration of Kelly's claims, we find either that they are without merit or that they should be dismissed without prejudice to Kelly attempting to litigate the claims further in state court.

### 2. Kelly's Claims Regarding the Search of His Cell at the LCCF Have No Legal Merit.

Kelly's initial claim in this action is that Defendants violated his constitutional rights by searching his prison cell, or refusing to permit him to be present during the search.[5]  Regardless of the fact that Kelly was being held as a pretrial detainee during

---

[5] Kelly has brought his claims for alleged violations of both the Fourth and Eighth Amendments to the United States Constitution.  Because he claims to have been held as a pre-trial detainee at the time of the alleged conduct, Kelly's claims for violations of the Eighth Amendment are improper.  The Eighth Amendment "was designed to protect those convicted of crimes and consequently the Clause applies only after the State has complied with constitutional guarantees traditionally associated with criminal prosecutions."  Hubbard v. Taylor, 399 F.3d 150, 164 (3d Cir. 2005) (quoting Whitley v. Albers, 475 U.S. 312, 318 (1986)).  Accordingly, the Eighth Amendment's Cruel and Unusual Punishments Clause does not apply until "after sentence and conviction."  Graham v. Connor, 490 U.S. 386, 392 n.6 (1989).  Accordingly, we find that Kelly's efforts to style his claims as alleging violations of the Eighth Amendment are unavailing.  Instead, we consider Kelly's claims for alleged violations of the Fourth Amendment's prohibition against unreasonable searches and seizures.  See U.S. Const. amend. IV.

the times when Defendants are alleged to have searched his cell, the law has long been settled that inmates – including pretrial detainees – do not enjoy a reasonable expectation of privacy in their prison cells, and that searches of inmate and detainee cells are constitutionally permissible.   Accordingly, Plaintiff's claim of a constitutional violation relating to the search of his cell fails as a matter of law.

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures . . . ."  U.S. Const. amend. IV.  In order to give force to this guarantee, government officials are limited to conducting searches that are reasonable.  Delaware v. Prouse, 440 U.S. 648, 653-54 (1979); Florence v. Bd. of Chosen Freeholders of Burlington, 621 F.3d 296, 301 (3d Cir. 2010).  As the Third Circuit has explained:

> Reasonableness under the Fourth Amendment is a flexible standard, Bodine v. Warwick, 72 F.3d 393, 398 (3d Cir. 1995), "not capable of precise definition or mechanical application, Bell [v. Wolfish, 441 U.S. 520, 559 (1979)]. "In each case it requires a balancing of the need for the particular search against the invasion of personal rights that the search entails."  Id.

Florence, 621 F.3d at 301.

In Block v. Rutherford, 468 U.S. 576 (1984) the Supreme Court directly addressed this issue and, in so doing, unequivocally foreclosed Plaintiff's claims

17

relating to the searches of his cell in the SHU at the LCCF.  In <u>Block</u> the Supreme Court flatly held that the search of a pretrial detainee's cell by prison officials does not violate the Fourth Amendment or offend principles of due process.  <u>Id.</u> at 590-91. Moreover, the Court held that pretrial detainees have no constitutional right to be present during the searches of their cells, and that prison policies requiring that detainees be absent during cell searches did not run afoul of any constitutional protections.  <u>Id.</u> and n.12; <u>see also</u> <u>Bell v. Wolfish</u>, 441 U.S. 520, 555-556 (1979). More recently, the United States Court of Appeals for the Third Circuit has explained:

> The defendants correctly assert that prisoners do not have a Fourth Amendment right to privacy in their cells.  <u>Hudson v. Palmer</u>, 468 U.S. 517, 529, 82 L. Ed. 2d 393, 104 S. Ct. 3194 (1984).  The Supreme Court has concluded that the Fourth Amendment right to privacy, to be free from unreasonable searches, is fundamentally inconsistent with incarceration.  <u>Id.</u> at 527.  Mindful that internal security is a chief concern in prisons, the Court recognized that it would be impossible to prevent the introduction of weapons, drugs and other contraband into the premises if prisoners maintained a right of privacy in their cells.  <u>Id.</u> Therefore, "the Fourth Amendment has no applicability to a prison cell."

<u>Doe v. Delie</u>, 257 F.3d 309, 316 (3d Cir. 2001).

On the basis of the foregoing, it is beyond argument that Plaintiff did not enjoy a privacy right in his prison cell within the SHU at the LCCF, even in his capacity as a pretrial detainee, and he had no constitutional right to be present during the officers' searches of his cell in March and April 2011.  For these reasons, Plaintiff's

constitutional claims regarding the searches of his cell are without any legal merit.

Moreover, Plaintiff does not allege that any of his property was confiscated, damaged, or otherwise impaired during the two searches complained about, and we cannot perceive any basis for Plaintiff's claim other than a general assertion that the search was unreasonable or somehow violated his privacy.  Because we find that Plaintiff's claims have no legal merit and have been foreclosed by Supreme Court precedent, we must recommend that Plaintiff's claims relating to the search of his cell be dismissed with prejudice.

### 2.   Plaintiff's Claims Regarding Being Subjected to Two Strip Searches Incident to the Search of His Cell Should Be Dismissed Without Prejudice.

As noted above, Plaintiff's claims relating to the search of his jail cell should be dismissed with prejudice.  In contrast, we conclude that Plaintiff's claims relating to two alleged strip searches in March and April, 2011 should be dismissed without prejudice.  We continue to find that Plaintiff's claims should be dismissed on the grounds that he has failed to respond timely to Defendants' motion to dismiss, and because we believe that Rule 41 of the Federal Rules of Civil Procedure now permits the dismissal of this action in light of Plaintiff's failure to prosecute his claims.  However, because Defendants have not addressed this aspect of Plaintiff's claim in

any meaningful way, and because strip searches of pretrial detainees may, in some

limited cases, potentially give rise to constitutional claims, we are constrained to

recommend that the Court dismiss this claim without prejudice to Kelly's right to

refile this claim.[6]

Because we recommend that this claim be dismissed without prejudice due to

Kelly's failure to prosecute this lawsuit, because Defendants have not addressed this

claim in their motion, and because Kelly has alleged little factual detail in support of

---

[6] Although we appreciate that Plaintiff initially filed this action in state
court, for Plaintiff's benefit, we note that we recently issued a report and
recommendation noting that Plaintiff's ability to refile this action in federal court
may have been forfeited as a result of Plaintiff's long history of filing baseless
actions in federal court *in forma pauperis*. See Civ. No. 1:11-cv-1294 (M.D. Pa.)
(Doc. 19). In our report, we observed that in the Middle District of Pennsylvania
alone, Plaintiff has filed at least three civil actions that have been dismissed as
frivolous, malicious, or because they failed to state a claim on which relief could
be granted. Id. As a result, Plaintiff's right to bring further lawsuits in federal
court *in forma pauperis* may at this time be forfeited. See 28 U.S.C. § 1915(g)
("In no event shall a prisoner bring a civil action . . . under this section if the
prisoner has, on 3 or more prior occasions, while incarcerated or detained in any
facility, brought an action or appeal in a court of the United States that was
dismissed on the grounds that it is frivolous, malicious, or fails to state a claim
upon which relief may be granted, unless the prisoner is under imminent danger of
serious physical injury.). Because Plaintiff is no longer confined at the LCCF, but
is now incarcerated at the State Correctional Institution at Camp Hill, he cannot
credibly claim that he is in "imminent danger of serious physical injury" as a result
of strip search policies at the LCCF. Accordingly, to the extent the district court
adopts our earlier report and recommendation, Plaintiff will be foreclosed from
refiling this action in federal court, but must instead return to the state courts
where he initially sought relief.

his claim, we are reluctant to evaluate the legal merits of this claim in any detail.  We do note that in <u>Bell v. Wolfish</u>, 441 U.S. 520, 559 (1979), the Supreme Court held that a blanket policy of subjecting inmates to strip searches following contact visits at the prison was constitutionally permissible.  In reaching its decision, the Court instructed that lower courts are to consider four factors in considering a Fourth Amendment claims challenging prison policies, including: "[1] the scope of the particular intrusion, [2] the manner in which it is conducted, [3] the justification for initiating it, and [4] the place in which it is conducted."  <u>Id.</u>  In consideration of these factors, the Court found that the prison's blanket policy of strip searching inmates following contact visits did not offend the Fourth Amendment.

Five years after <u>Bell</u>, the Supreme Court issued a pair of decisions that further made clear that inmates' and detainees' Fourth Amendment rights were quite limited, and seemed potentially to suggest that inmates enjoyed no expectation of privacy within the prison setting itself.  <u>See</u> <u>Hudson v. Palmer</u>, 468 U.S. 517 (1984); <u>Block v. Rutherford</u>, 468 U.S. 576 (1984).  In this regard, the Court in <u>Hudson</u> held that "society is not prepared to recognize as legitimate any subjective expectation of privacy that a prisoner might have in his prison cell and that, accordingly, the Fourth Amendment proscription against unreasonable searches does not apply within the confines of the prison cell." <u>Hudson</u>, 468 U.S. at 526.  This broadly cast language led

21

some to litigants to argue that the Supreme Court would find that inmates had no cognizable Fourth Amendment claims in the prison setting.  See, e.g., Allison v. The Geo Group, Inc., 611 F. Supp. 2d 433, 444 (E.D. Pa. 2009).

However, although in Block and Hudson, the Supreme Court made clear in sweeping language that inmates and pretrial detainees enjoyed no Fourth Amendment right to privacy in their jail or prison cells, most courts following have found that Bell retains its vitality with respect to the constitutionality of strip searches conducted in custodial settings.  See Allison v. The GEO Group, Inc., 611 F. Supp. 2d 433, 445 (D.N.J. 2009) (collecting cases and concluding that Bell's approach to assessing constitutionality of strip search procedures remains binding); see also Elliott v. Lynn, 38 F.3d 188, 191 n.3 (5th Cir. 1994) (inmates' Fourth Amendment protection from unreasonable strip searches survives Hudson); Watsy v. Ames, 842 F.2d 334, 1988 WL 24978, at *2 (6th Cir. 1988 (finding that Hudson was inapplicable in a case involving a strip search, since Hudson concerned "the search of a cell as opposed to the search of an individual:); Forbes v. Trigg, 976 F.2d 308, 312 (7th Cir. 1992) ("[P]rison inmates retain protected privacy interests in their bodies, although these rights do not extend to their surroundings.").[7]

_____

[7]  It does not appear that the Third Circuit has definitively answered this question, although the Court recently "assume[d that] detainees maintain some Fourth Amendment rights against searches of their person upon entry to a

22

It thus appears that the constitutionality of a custodial strip search of an inmate who has already entered the prison setting continues to be governed by the multi-factor test announced in Bell.   Indeed, just last year the United States Court of Appeals for the Third Circuit followed Bell in upholding a prison policy requiring that all inmates being admitted to the prison be subjected to a mandatory strip search regardless of the nature of their charged offenses, and without regard to whether prison officials had an articulable suspicion that the incoming inmate might have contraband or weapons.   See Florence v. Bd. of Chosen Freeholders of Burlington, 621 F.3d 296, 311 (3d Cir. 2010).[8]

In Plaintiff's complaint, he alleges few facts that would permit a court to evaluate the constitutionality of the two strip searches he claims to which he claims he was subjected in early 2011 at the LCCF.   For their part, Defendants have not

_____

detention facility."   Florence v. Bd. of Chosen Freeholders of Burlington, 621 F.3d 296, 306 (3d Cir. 2010)

[8] We observe that the United States Supreme Court recently granted a writ of certiorari and will review the Third Circuit's decision in Florence in order to resolve a split that has emerged in the circuit courts with respect to the constitutionality of mandatory strip searches of all incoming detainees entering custodial facilities, including strip searches of individual arrested for minor offenses, and where the searches were not supported by reasonable suspicion that the arrestee was hiding a weapon or contraband.   See Florence, 621 F.3d at 303-04 and n.4 (discussing legal issue and circuit split); see also Florence v. Bd. of Chosen Freeholders, 131 S. Ct. 1816, 179 L. Ed. 2d 772 (April 4, 2011) (granting writ of certiorari).

specifically addressed this aspect of Plaintiff's complaint in any fashion, and thus have not provided the Court with any meaningful way to evaluate the merits of Plaintiff's claims at the pleading stage.

Upon consideration, although we find that Plaintiff's claims in their entirety should be dismissed pursuant to Local Rule 7.6 and Fed. R. Civ. P. 41(b), and find that Plaintiff's claim relating to the searches of his prison cell at the LCCF should be dismissed with prejudice because the claim is foreclosed by Supreme Court precedent, we find that Plaintiff's claims relating to the two alleged strip searches should be dismissed without prejudice to Plaintiff endeavoring to refile these claims with additional allegations if he believes that these claims have merit in light of the guidance provided in this report.  However, because Plaintiff has failed to respond to Defendants' motion to dismiss, or this Court's orders directing him to respond, we find that Plaintiff's complaint should, at this time, be dismissed in the manner articulated above.

## IV.   __RECOMMENDATION__

Accordingly, for the reasons set forth above, upon due consideration, IT IS HEREBY RECOMMENDED THAT Defendants' motion to dismiss be GRANTED as follows:

1.      Plaintiff's claims regarding the searches of his cell at the LCCF should

be DISMISSED with prejuduce.

2.      Plaintiff's claims regarding the strip searches of his person at the LCCF

should be DISMISSED without prejudice.

3.      Plaintiff's claims for injunctive relief should be dismissed as moot.

The Parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified  proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 14th day of October, 2011.

**_S/Martin C.  Carlson_**
Martin C. Carlson
United States Magistrate Judge